## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**FEDERAL HOME LOAN MORTGAGE
CORPORATION,**

     **Plaintiff,**

**v.**                                                                 **CASE No. 17-cv-00274-S-LDA**

**STEVEN P. CARVALHO, PAUL D.
CARVALHO, RODNEY A. CARVALHO
III, the UNITED STATES OF AMERICA
acting by and through the Department of
the Treasury (Internal Revenue Service)
and the STATE OF RHODE ISLAND
acting by and through its Department of
Revenue (Division of Taxation),**

     **Defendants.**

_____/

## MOTION FOR DISMISSAL

     NOW COME Plaintiff, Federal Home Loan Mortgage Corporation, hereby moves this honorable court to dismiss this case without prejudice pursuant to the provisions of Federal Rules of Civil Procedure 41(a)(2).

     In support of this motion the plaintiff states as follows.  The relief the Plaintiff sought in this action is the ability to conduct a foreclosure of the Subject Property.  The Parties have entered into a Loan Modification Agreement that pursuant to its terms brings the Loan Current, as such the Plaintiff no longer seeks to foreclose at this time nor can it foreclose at this time.  A copy of the Loan modification agreement is attached as an exhibit.  No defendant has filed any counterclaims in this matter and while Defendant Carvalho has through counsel filed an answer Plaintiff's counsel has attempted to reach out to Mr. Carvalho's counsel but he refuses to stipulate to a dismissal, as such the Plaintiff is forced to ask this court for a dismissal.

Wherefore, The Plaintiff requests that this court grant a dismissal of this matter without prejudice and any other relief this court deems just, necessary and right.

Dated:  December 7, 2018.                    Respectfully submitted,

                                                    Federal Home Loan Mortgage
       Corporation,
       Plaintiff,
       By its Attorney,

       /s/Paul G. Manning, Jr.
       Paul G. Manning, Jr., Esq., RI # 7124
       Korde & Associates, P.C.
       900 Chelmsford Street, Suite 3102
       Lowell, MA 01851
       (978) 256-1500 (ext. 263)
       pmanning@kordeassociates.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2018 I caused this Motion for Dismissal to be filed through the electronic filing system with electronic service completed on all parties registered therein to receive notice in this case.

The document electronically filed and served is available for viewing and/or downloading from the United States District Court's Electronic Filing System.

                                          /s/ Paul G. Mannning, Jr.
                                          Paul G. manning, Jr, Esq. RI Bar #7124

# EXHIBIT A

Loan Number: ▮▮▮▮▮▮▮
Investor Loan Number: ▮▮▮▮▮▮

This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT

Borrower (s):  Steven P Carvalho

### (Providing for Fixed Interest Rate)

### BALLOON PAYMENT DISCLOSURE

**THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF BORROWER MAKES ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, BORROWER WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).**

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* **- LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE BORROWER A NEW LOAN ON THE MATURITY DATE. IF BORROWER DOES NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, BORROWER MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER**

**LENDER MAKES BORROWER A NEW LOAN ON THE MATURITY DATE, BORROWER WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF BORROWER IS UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, BORROWER MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.**

The debtor(s), Steven P Carvalho and Freddie Mac through the servicer of the underlying mortgage loan agreement, Ocwen Loan Servicing, LLC, have agreed to modify the terms of said underlying mortgage loan agreement. Freddie Mac is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. Ocwen Loan Servicing, LLC, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 23rd day of July, 2018, between Steven P Carvalho ("Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 01/04/2008 and recorded in the Records of Providence County, RI and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

11 Grand View St
Providence, RI 02906

the real property described being set forth as follows:

**(Legal Description Attached as Exhibit if Recording the Modification Agreement)**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of 08/01/2018, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $302,024.77, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

$74,024.77 of the New Principal Balance shall be deferred ("Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $228,000.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.375%, from 08/01/2018. Borrower promises to make monthly payments of principal and interest of U.S. $1,006.76, beginning on 09/01/2018, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this agreement. The initial monthly escrow amount is $634.14. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law. The yearly rate of 4.375% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The Maturity Date will be 08/01/2058 ("Maturity Date"). I specifically acknowledges that this is a balloon modification and therefore I will have a balloon payment due at maturity in the approximate amount of $74,024.77 " Balloon Payment."

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 4.375 | 08/01/2018 | $1,006.76 | $634.14 | $1,640.90 | 09/01/2018 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower promises to also pay any applicable monthly escrow payments as outlined in this agreement. The initial monthly escrow amount is $634.14. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) The new Maturity Date.

2.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

3.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    a.  All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    b.  All terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

4.  Borrower understands and agrees that:
    a.  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    b.  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note

and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d.  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

e.  Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) Name, address, and telephone number, (ii) Social Security Number, (iii) Credit score, (iv) Income, (v) Payment history, (vi) Account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging  ☐.

5.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Items.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum ("Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender

can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

6.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.O. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

7.  This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both me and Ocwen. This Modification constitutes the entire agreement between me and Ocwen and, supersedes all previous negotiations and discussions between me, Ocwen and/or Ocwen's predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to Ocwen Loan Servicing.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein.  This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

_____8-1-18_____
Date

_____Steven P Carvalho_____
Steven P Carvalho

State of _Rhode Island_

County of _Providence_

On this 15 day of August 2018, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _Stanley D. Conquec_ personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public _John A Curcis_

My Commission Expires: _6-28-2_

## LENDER ACKNOWLEDGEMENT

**(For Lender's Signature Only)**

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

Ocwen Loan Servicing

_Felicia Perry_
_____
Authorized Officer

**Felicia Perry**       AUG 15 2018
_____
Date


State of _____

County of _____

On this ___ day of _____, ____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of Ocwen Loan Servicing, LLC., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.


_____
Notary Public

My Commission Expires: _____

# John B. Ennis

*Attorney at Law*
**1200 Reservoir Avenue**
**Cranston, Rhode Island 02920**

**Tel. (401) 943-9230**                              **Fax (401) 679-0035**

August 1, 2018

Ocwen Loan Servicing, LLC
Atten: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

Steven Carvalho
11 Grand View Street
Providence, RI 02906
Loan No.: ███████

Dear Sir or Madam:

Enclosed please find the executed loan modification agreement for my client Steven Carvalho.

Please process this loan modification accordingly.

Sincerely,

3. B.

John B. Ennis, Esq.